COURTLAND J. YEARSLEY, APPELLEE, V. A. C. INGRAM ET AL.,
APPELLANTS.

FILED JUNE 18, 1915.  No. 18197.

1. Appeal: CONFLICTING EVIDENCE. The determination by the jury of
controverted questions of fact, properly submitted on conflicting
evidence, will not be disturbed on appeal unless clearly wrong.

2. Bills and Notes: PAYMENT: INSTRUCTIONS. The trial court instructed
the jury that, if they should find from the evidence that the live
stock was taken by the plaintiff in full payment and satisfaction
of the note, they should find for the defendants. *Held*, that the in-
struction properly submitted the question of defendants' theory
of his defense to the jury.

APPEAL from the district court for Red Willow county:
ERNEST B. PERRY, JUDGE. *Affirmed.*

*Ritchie & Wolff,* for appellants.

*Livingston & Heinke, C. E. Eldred* and *S. R. Smith,* con-
tra.

BARNES, J.

This was an action to recover the balance due plaintiff
on a promissory note, dated August 26, 1910, given by de-
fendants Ingram and Shafer for the rent of a farm con-
sisting of two sections of land in Red Willow county. The
note was signed by defendant Porter as a surety. The pe-
tition was in the usual form, and gave the defendants credit
for $710, which was duly indorsed on the note. The prayer
of the petition was for a judgment of $1,090, with interest.
The defendants, by their answers, admitted the execution
of the note in question, but its delivery was not admitted.
The remainder of the answers are exceedingly voluminous,
and will not be set forth in this opinion. It is sufficient
to say that they alleged, in substance, that, in order to in-
duce the defendants Ingram and Shafer to lease the farm
and execute the note, plaintiff represented to the defend-
ant Ingram that the farm was composed of good black soil,

was productive, and one of the best farms in the county; that there were three wells on the farm, which produced an abundance of water sufficient to properly water 400 head of cattle; that there were 150 acres in corn, which would produce 3,000 bushels, and that the wheat land on the farm had produced 15 bushels an acre; that they well knew the representations were false and untrue, and that Ingram and Shafer believed the same and relied upon them. It was further alleged that the farm did not produce any corn for the year defendants rented it; that the wheat yield was only about two bushels an acre; and that the wells did not produce sufficient water to support 400 head of cattle; that in September, 1911, defendant Ingram settled with plaintiff and left the premises and turned over to plaintiff live stock of the agreed value of $710, which was received by plaintiff in full payment and settlement of the note in suit. Plaintiff, by his reply, denied all of the allegations of the answer, and alleged that the live stock delivered to him by defendant Ingram was not taken in full payment of the note, but that the value thereof was to be indorsed thereon as part payment. On these issues the case was tried to a jury. A verdict was rendered for plaintiff for the sum of $1,100, for which sum plaintiff had judgment, and the defendants have appealed.

It is contended that the verdict is not sustained by the evidence. It appears that defendant Ingram visited the plaintiff at the farm in question on the 25th day of August, 1910, and after a cursory inspection agreed to lease it if his codefendant Shafer was satisfied. After returning to Indianola and talking with Shafer, Ingram called the plaintiff by telephone and told him to come in the next day to make the lease. Plaintiff went to Indianola on the following day, and the lease and note were executed. At the same time defendant Ingram executed and delivered to plaintiff a chattel mortgage to secure the payment of the note, and defendant Shafer procured defendant Porter to sign the note as surety. By the terms of the lease, which was introduced in evidence, defendants were to have the use of the farm from the 1st of March, 1911, to the 1st of

March, 1912. Shafer went to the farm in the latter part of November, 1910, and sowed part of the land to wheat, which he drilled in on the old wheat stubble without previous plowing. On March 1, 1911, defendant Ingram moved onto the land. No testimony was introduced tending to show what amount of corn or wheat was produced on the farm in 1910, and, so far as those representations are concerned, there was a failure of proof. No testimony was introduced as to the number of acres of corn planted by defendants in 1911, but the wheat which Shafer sowed was shown to have produced about two bushels an acre. It appears that the farm was level and the soil was of the average quality and productiveness of land in that part of the country. Defendants testified that the wells did not produce sufficient water to supply 400 head of stock, but admitted that when they were kept clean they produced sufficient water. The testimony of plaintiff's witnesses showed that the wells produced sufficient water to supply 400 head of stock when kept cleaned out, and that there was water in abundance running away from the wells during the pasturing season. None of the representations set forth in defendant's answers are found in the lease. The evidence on that question being conflicting, the verdict of the jury on that branch of the defense should not be disturbed.

As to the alleged payment of the note in full by the delivery to the plaintiff of the live stock in question, defendant Ingram testified, in substance, to the statements contained in the answer. His testimony was denied by the plaintiff, and the memorandum written by Ingram himself, by which the live stock was turned over by the plaintiff, reads as follows: "This is to certify that I have sold to C. J. Yearsly the stock under morgage for $710 (seven hundred and ten) and privelege to run in pasture this fall. A. C. Ingram. Sept. 7, 1911." The plaintiff testified that the value of the live stock which defendant Ingram turned over to him was to be indorsed on the note as part payment, and positively stated that there was never any agreement that the stock should be taken in full payment and satisfaction thereof. The indorsement on the

note itself showed that the $710 was received as part payment. It follows that the verdict of the jury, so far as that question is concerned, should not be set aside.

It is the contention of appellants that the court erred in not instructing the jury on the question of accord and satisfaction. That defense is not specifically pleaded in the answers. The record discloses, however, that the court, on its own motion, instructed the jury that, if they found from the evidence that the chattel property was turned over to the plaintiff at the agreed price of $710, and was to be taken by him in full settlement and payment of the note, they should find for the defendants. This was a fair submission of the defendants' theory of their defense, and was as favorable to them as the pleadings and evidence would warrant.

Defendants also set up a counterclaim for repairs. This was allowed by the jury, and, by a special finding, was deducted from the amount due on the note.

An examination of the instructions and of the entire record satisfies us that it contains no reversible error, and the judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.